Filed 11/12/13  P. v. Sardinha CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B243935 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA075116) |
| v. | |
| JOSHUA SARDINHA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathryn A. Solorzano, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Joshua Sardinha appeals from his conviction of two counts of second degree robbery (Pen. Code, § 211; counts 1 & 2), two counts of assault (§ 245, subd. (a)(1), (2); counts 3 & 4), and the associated firearm enhancements (§§ 12022.53, subd. (b), 667.5, subd. (c), 1192.7, subd. (c) & 12022.5). Defendant contends the trial court erroneously admitted evidence of an uncharged crime, and, alternatively, failed to instruct the jury on the limited permissible use of this evidence. He contends the errors amount to a constitutional violation of his due process rights by rendering his trial fundamentally unfair. Finding no merit in any of defendant's contentions, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Aram Arutyunyan testified at trial that on January 23, 2009, he found an advertisement on Craigslist for a MacBook laptop computer for $2,300. He told his brother, Gamlet, that he wanted to buy the computer, and asked to borrow $1,300. Gamlet gave Aram the money, and insisted he go with Aram to make the purchase, because he was concerned that it was "not safe." Aram contacted defendant by email, and received a text message response that the computer was "available, but it's not with me and just wait one day. It's by my friend." The following day, Aram received a text message from "Derrick" asking if he was still interested in the laptop. Aram indicated that he was, and defendant replied that he might have to wait until January 25 to sell the computer. Aram asked defendant to save the computer for him, and defendant replied, "Okay. I'll let you know." Later that day, defendant texted that he could sell the computer before 9:00 that evening. Aram told him he had the cash, and they agreed to meet at defendant's Culver City apartment on Redwood Boulevard at 9:00 p.m.

Aram and Gamlet drove to defendant's apartment complex. Aram got out of the car to meet defendant. Defendant was carrying a dark-colored duffel bag. Gamlet parked, and he and Aram walked with defendant toward the apartment building. Defendant then said, "Let's go [behind the building], because my kids are sleeping, and it's in the trunk of my car." Gamlet became concerned and asked Aram in Armenian, "You -- is everything -- is it cool? We're going behind the building." Aram replied, also in Armenian, "Yeah. I talked to him all day today. It's fine."

2

The three walked to a parking area behind the apartment complex. Defendant opened the duffel bag, which contained "fake-ish" Apple boxes. Aram and Gamlet asked to inspect the laptop, but defendant told them he wanted to see the money first. Aram handed the money to defendant, who counted it.

Aram noticed someone hiding behind a nearby car, and asked defendant "Who you got behind the car?" Defendant responded, "Let's just count really fast and go, because the whole building thinks that I do drugs, like I'm a trap star," which is slang for a drug dealer. Aram saw the person behind the car pop up again, and asked "Why is that guy doing that again?" He told defendant "something's wrong. Who is spying on us? He is going to rob you, and I'm scared, because that's my money." Defendant handed the money to Aram, walked around the car and reported that no one was there. He walked back to Aram and asked for the money. Aram handed it back to defendant, and then saw that the person was still behind the car.

After defendant finished counting the money, he put it in his pocket and pulled out a semi-automatic handgun, which he held against Aram's forehead. He told Aram to "get on the f------ floor." Aram placed his hands behind his head and said, "Just take the money. Don't kill me." Defendant hit Aram with the handgun, knocking him to the ground. Defendant and another person began kicking and punching Aram.

At least three African-American men ran toward Gamlet. One of them struck him in the right eye with a handgun. He started bleeding and fell to the ground, where the men repeatedly punched and kicked him, and rifled through his pockets. Eventually, defendant and his cohorts ran away.

Aram helped Gamlet walk to the car. Gamlet began driving home, and Aram called their family and the police. When they arrived home, their mother fainted when she saw Gamlet's injuries. Friends took Gamlet to a nearby hospital for treatment. He was in the emergency room for two days, and the ICU for one week. Gamlet's eye socket was broken, requiring major surgery.

Both Aram and Gamlet identified defendant in court. In March 2010, Gamlet also identified defendant in a photographic lineup, but Aram was unable to do so.

3

Los Angeles Police Sergeant Blanca Lopez investigated the case and also testified at trial.  She obtained the call records for "Derrick's" phone.  Through those records, she was able to locate Alex Luu, who had contacted defendant through Craigslist about the purchase of some iPhones, and who told the Sergeant how he had narrowly escaped harm at defendant's hands.  The prosecution introduced Alex Luu's testimony under Evidence Code section 1101, subdivision (b).  Luu had identified defendant in a photographic lineup.  Luu also identified defendant in court.[1]

Luu testified that in January 2009, he had responded to a Craigslist posting advertising Apple iPhones for $425. When he went to meet the seller at a supermarket parking lot, the seller did not show up, saying he was having car trouble.  On January 24, 2009, Luu responded to a similar ad that he believed was posted by the same seller.  Luu and defendant, who called himself "Derrick," corresponded by text message.  Defendant told Luu to meet him at defendant's apartment building.  Later that day, Luu and a friend of his arrived to meet defendant, and Luu asked defendant to see the phones.  Defendant showed Luu a black duffel bag and said, "The phones are in here."  When Luu asked to inspect one of the phones, defendant told Luu to "get out of [the] car."  Luu felt uncomfortable, so he did not get out of the car.  Defendant told Luu he was the apartment manager and there were cameras that could see them, so defendant suggested they should move behind a nearby tree that was "covering everything."  Luu told defendant he was wasting his time, and that if defendant did not show him the iPhones, Luu would leave.  When defendant asked Luu for a cigarette, Luu drove away.  Defendant texted Luu to come back and "Grab these phones."  Luu offered to pay for defendant's gas money if defendant would drive to Orange County with the phones.  Defendant replied that he would get a ride out there, but never contacted Luu again.

The prosecutor also offered evidence of an uncharged February 22, 2009 robbery.  Defendant was not the assailant in that robbery, but his fingerprint was found on one of the iPhone boxes the assailant left at the scene.  The prosecutor initially offered the

---

[1]    Defendant does not challenge the admission of the uncharged crime against Luu on appeal.

4

evidence to show a "common plan and/or scheme" based upon the common elements of the robberies of people responding to Craigslist ads for Apple products. The court found the evidence was not necessarily admissible under Evidence Code section 1101, subdivision (b), but that it was relevant circumstantial evidence that defendant was involved in these scams because his fingerprint showed he had been in possession of the duffel bag at some point. The court concluded that all of the robberies took place within a short distance of each other, and involved a perpetrator with a duffel bag who lured victims to a location under the ruse that they were selling Apple products. Defendant objected under section 352. The trial court overruled the objection, finding the evidence more probative than prejudicial.

Consequently, an uncharged victim, Krystle Rae Papa, testified that on February 22, 2009, she and her then-boyfriend Trevor Gentry went to a McDonald's on Lincoln Boulevard to purchase iPhones that had been advertised for sale on Craigslist. A "young guy," who was not defendant, approached them. He was carrying a black backpack, and asked if they were there for the iPhones. The "young guy" suggested that the sale take place in Papa and Gentry's car. He got in the back seat of their car, and asked if they had the money. When Gentry handed over the money, the perpetrator counted it and then "maced" Gentry's face. Papa tried to grab the perpetrator's sweater, and he sprayed her as well. The perpetrator got out and ran away, but left the backpack behind. It contained several iPhone boxes, on one of which the police found defendant's left middle fingerprint.

Los Angeles Police Detective Noah Stone interviewed defendant. Defendant admitted to placing "numerous ads on Craigslist" for the sale of iPhones. He claimed that he placed the ads for his friend, and received $100 for each sale. He posted the ads with a contact phone number, and would answer calls concerning the iPhones, telling the caller where to meet to buy the phones.

A defense witness testified she had paid defendant to paint her apartment in New York, and he was there between January 21, 2009, and January 26, 2009.

5

Defendant contends the trial court erroneously admitted evidence of the uncharged February 22 incident. Specifically, he contends the evidence was irrelevant and prejudicial, and that the trial court erroneously concluded the evidence was not subject to an Evidence Code section 1101, subdivision (b) analysis. Alternatively, defendant contends the trial court failed to instruct the jury on the limited permissible use of this evidence. Defendant claims the errors amount to a constitutional violation of his due process and fair trial rights.

"As a general rule, evidence the defendant has committed crimes other than those for which he is on trial is inadmissible to prove bad character, predisposition to criminality, or the defendant's conduct on a specific occasion." (*People v. Williams* (2009) 170 Cal.App.4th 587, 607; see also Evid. Code, § 1101, subd. (a) ["evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion"].)

However, Evidence Code section 1101, subdivision (b) permits evidence of a defendant's uncharged misconduct when relevant to prove "some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." " 'The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.)

Admissibility under Evidence Code section 1101, subdivision (b) is also subject to section 352 analysis. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).) Section 352 gives the trial court the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " 'The "prejudice" referred to in . . . section 352

6

applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.  In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]"  (*People v. Bolin* (1998) 18 Cal.4th 297, 320 (*Bolin*).)

A trial court's ruling under Evidence Code sections 1101 and 352 is reviewed for abuse of discretion.  (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

The trial court found that the evidence of the February 22 incident was probative of defendant's participation in a scam like the one for which he was on trial, yet concluded that it "[didn't] see an [Evidence Code section] 1101(b) issue."  We conclude evidence of the February 22 incident was not "generally admissible" as circumstantial evidence that defendant committed the charged robberies, independent of section 1101, subdivision (b).  The probative value of the evidence depended on the inference that defendant's fingerprint on the empty iPhone box established his participation in the February 22 crime.  Accordingly, the fingerprint was "evidence that [defendant] committed a crime, civil wrong, or other act" within the meaning of section 1101, subdivision (b).  Other crimes evidence is not admissible to prove defendant committed the charged offense, except under limited circumstances requiring a more stringent analysis than relevance.  (§ 1101, subds. (a), (b); see also *Ewoldt*, *supra*, 7 Cal.4th at p. 404 ["Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis.' "].)

Nevertheless, any ruling that is correct in law will be sustained " ' "regardless of the considerations which may have moved the trial court to its conclusion."  [Citation.]' [Citation.]"  (*People v. Zapien* (1993) 4 Cal.4th 929, 976; see also *People v. Jones* (2012) 54 Cal.4th 1, 50.)  Here, because the prosecution initially offered the evidence under Evidence Code section 1101, subdivision (b), there is a full and complete record demonstrating the evidence was admissible to establish defendant's identity, as well as a common plan or scheme.

In assessing relevance under Evidence Code section 1101, subdivision (b), the least degree of similarity between the uncharged and charged offenses is required to

prove intent. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) The uncharged misconduct need only be sufficiently similar to support an inference that the defendant probably had the same intent on each occasion. (*Ibid*.) To prove the existence of a common design or plan, a higher degree of similarity between the uncharged and charged offenses is required. (*Ibid*.) "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*Id.* at p. 403.) Even plans lacking originality are highly relevant. (*Ibid*.) "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity . . . . 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " (*Ibid*., citations omitted.)

The February 22 incident shared sufficient features common with the charged offenses to support the inference that they were part of a common plan in which defendant had a hands-on role, to rob victims by luring them with phony Craigslist ads and to use violence to immobilize them while making the getaway. In the charged and uncharged crimes, victims responded to Craigslist postings advertising the sale of Apple products. The crimes occurred within a month of each other, at nearby locations. In each, the perpetrator carried a dark bag containing "fake-ish" Apple boxes. The perpetrator did not allow the victims to inspect the products, demanding the money in advance. After the money was counted, the perpetrator violently immobilized the victims, and made off with their money. Just as defendant was aided in the robbery of the Arutyunyan brothers by several others, more than one perpetrator was involved in the February 22 robbery (at least, the accomplice who arranged the transaction and the assailant who pepper sprayed the victims). It is immaterial that defendant was not the assailant in the February 22 incident; defendant's fingerprint on one of the empty boxes showed he had touched it at some point before it was put inside the bag, just as he handled the duffel bag holding the fake Apple boxes involved in the other crimes. Clearly, defendant handled the decoys in both crimes, having a pivotal role in the ruse. Given these similarities, the February 22 incident was highly probative of defendant's

participation in the charged crimes. (See *People v. Balcom* (1994) 7 Cal.4th 414, 424-425.)

Moreover, the evidence was not unduly prejudicial. The February 22 incident was significantly less violent than the charged crimes, and defendant did not take part in the assault on the victims in the February 22 incident. Therefore, the evidence was unlikely to " 'evoke an emotional bias against defendant.' " (*Bolin*, *supra*, 18 Cal.4th at p. 320.)

Defendant contends that even if the evidence was admissible, the jury did not receive a limiting instruction on the permissible use of the evidence.[2] Defendant admits that he did not request a limiting instruction at trial. Generally, a court is not required to instruct sua sponte on the limited admissibility of prior crimes evidence. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1094.) There is an exception where the uncharged offense is a dominant part of the evidence against the defendant and is highly prejudicial and minimally relevant. (*Ibid.*) The February 22 crime was not a dominant part of the case. Moreover, as discussed *ante*, the evidence was highly probative and was not unduly prejudicial.

Even assuming, arguendo, that the evidence should have been excluded, any error was necessarily harmless, even in the absence of the limiting instruction. The erroneous admission of evidence requires reversal only if it is reasonably probable that defendant would have obtained a more favorable result had the evidence been excluded. (Evid. Code, § 353, subd. (b); *People v. Earp* (1999) 20 Cal.4th 826, 878; *People v. Watson* (1956) 46 Cal.2d 818, 836.)[3] The evidence against defendant was substantial, and the

---

[2] CALCRIM No. 375 directs the jury to consider other crimes evidence only if the People have proved by a preponderance of the evidence that the defendant committed it and to consider it only for a specified limited purpose, such as identity, intent, motive, knowledge, accident, common plan or consent.

[3] We decline defendant's invitation to apply the more stringent harmless error analysis applicable to constitutional errors under *Chapman v. California* (1967) 386 U.S. 18. Defendant has attempted to put a "constitutional gloss" on the claimed error, arguing the admission of the uncharged February 22 incident violated due process and rendered his trial fundamentally unfair. Assuming this error was preserved by defendant's

February 22 incident was only a small part of the case. Aram, Gamlet, and Luu all identified defendant in court, and Gamlet and Luu also identified him in a photographic lineup. Defendant admitted to placing ads on Craigslist to sell iPhones for a "friend." It is not reasonably probable that defendant would have received a more favorable result had the testimony regarding the February 22 incident been excluded.

## DISPOSITION

The judgment is affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.

RUBIN, J.

---

Evidence Code section 352 objection (*People v. Partida* (2005) 37 Cal.4th 428, 435), we find no due process error. The admission of evidence may violate due process if there is no permissible inference a jury may draw from the evidence. (*People v. Steele*, *supra*, 27 Cal.4th at p. 1246.) Here, as discussed *ante*, there were clearly permissible inferences to draw from the evidence. Moreover, "the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*Partida*, *supra*, at p. 439.) The evidence introduced here was limited and was not so prejudicial as to render defendant's trial unfair.